IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LYNDA ELAINE MOODY, § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> NANCY A. BERRYHILL, § <br> COMMISSIONER OF THE § <br> SOCIAL SECURITY ADMINISTRATION, § <br> § <br> *Defendant*. § | Civil Action No.: 4:18-CV-2409 |

## MEMORANDUM AND ORDER

Plaintiff Lynda Elaine Moody filed this case under the Social Security Act, 42 U.S.C. §§ 405(g) for review of the Commissioner's final decision denying her request for social security benefits. Moody and the Commissioner moved for summary judgment (Dkts. 9, 10). After considering the pleadings, the record, and the applicable law, the court **DENIES** Moody's motion, **GRANTS** the Commissioner's motion, and **AFFIRMS** the final decision of the Commissioner.[1]

### I. Background

**1. Factual and Administrative History**

Moody filed claims for disabled widow social security insurance and supplemental security income benefits on October 8, 2015. She alleged the onset of disability as of October 1, 2015 primarily due to breast cancer and related treatments. Dkt.3-8 at 6. The agency denied her claim on initial review and reconsideration. Dkt. 3-3 at 16. An administrative law judge (ALJ) held a hearing on February 9, 2017 at which Moody and a vocational expert, Kay S. Gilreath, testified.

---

[1] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including entry of final judgment. Dkt. 7.

The ALJ issued an unfavorable decision denying Moody's applications for benefits on June 6, 2017. The Appeals Council denied review on October 17, 2017, and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2). Moody filed this case on July 10, 2018.

2. **Standard for District Court Review of the Commissioner's Decision**

Section 405(g) of the Act governs the standard of review in social security disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

With respect to all decisions other than conclusions of law,[2] "[i]f the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been defined as "more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id.* The courts strive for judicial review that is

---

[2] Conclusions of law are reviewed *de novo*. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

"deferential without being so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

The court considers four types of evidence in the record when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir.1991); *Hamilton-Provost v. Colvin*, 605 F. App'x 233, 236 (5th Cir. 2015).

**3. Disability Determination Standards**

The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 42 U.S.C. § 423(d)(1)(A)). A finding at any point in the five-step sequence that the claimant is disabled, or is not disabled, ends the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." Work is "substantial" if it involves doing significant physical or mental activities, and "gainful" if it is the kind of work usually done for pay or profit. 20 C.F.R. §§ 404.1572, 416.972; *Copeland v. Colvin*, 771 F.3d 920, 924 (5th Cir. 2014).

In the second step, the ALJ must determine whether the claimant has a severe impairment. Under applicable regulations, an impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Under binding

3

Fifth Circuit precedent, "[a]n impairment can be considered as not severe *only if* it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (emphasis added) (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). "Re-stated, an impairment is severe if it is anything more than a "slight abnormality" that "would not be expected to interfere" with a claimant's ability to work. *Id.* This second step requires the claimant to make a *de minimis* showing. *See Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992); *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).

If the claimant is found to have a severe impairment, the ALJ proceeds to the third step of the sequential analysis: whether the severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets one of the listings in Appendix 1, the claimant is disabled. If the ALJ finds that the claimant's symptoms do not meet any listed impairment, the sequential analysis continues to the fourth step.

In step four, the ALJ must decide whether the claimant can still perform his past relevant work by determining the claimant's "residual functional capacity" (RFC). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. 404.1545). The ALJ must base the RFC determination on the record as a whole and must consider all of a claimant's impairments, including those that are not severe. *Id.*; 20 C.F.R. §§ 404.1520(e) and 404.1545; s*ee also Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).

The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove she is not currently working and is no longer capable of performing her past relevant work. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). If the claimant meets her burden, the burden shifts to the commissioner at step five to show that the "claimant is capable of engaging in some type of alternative work that exists in the national economy." *Id*. Thus, in order for the Commissioner to find in step five that the claimant is not disabled, the record must contain evidence demonstrating that other work exists in significant numbers in the national economy, and that the claimant can do that work given her RFC, age, education, and work experience. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1998).

### 4. The ALJ's Decision

The ALJ noted that Moody met the non-disability requirements for disabled widow's benefits through January 31, 2019 and did not engage in substantial gainful activity after her alleged onset date of October 1, 2015. Dkt. 3-3 at 18. The ALJ found that Moody had the medically determinable impairments of breast cancer, gastroesophageal reflux disease grade I, neuropathy, obesity, and mild systemic disease, but that her depression was not a medically determinable mental impairment. Dkt. 3-3 at 19. After considering Moody's symptoms and the extent to which they are supported by objective medical and other evidence, the ALJ concluded that Moody "does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, [Moody] does not have a severe impairment or combination of impairments." Dkt. 3-3 at 19-22. Because the ALJ decided at step two of the sequential analysis that Moody did not have a severe impairment, and thus was not disabled, the ALJ did not continue the sequential analysis through the remaining steps.

## II. Analysis

In this appeal, Moody raises three grounds for reversal of the Commissioner's ruling that she was not disabled because she did not have a severe impairment for 12 consecutive months: (1) the ALJ's severity decision is not supported by substantial evidence; (2) the ALJ erred by not obtaining an updated medical opinion regarding the severity of her breast cancer; and (3) the ALJ did not properly assess her subjective complaints.

**1. The ALJ's severity ruling is supported by substantial evidence.**

According to agency regulations, an impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). In the Fifth Circuit, an impairment is not severe only if it is a "slight abnormality" that would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. *Loza*, 219 F.3d at 391 (quoting *Stone*, 752 F.2d at 1101); *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).

As part of the severity analysis, the ALJ must determine whether the impairment has or is expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), 416.909, 404.1509. In this case, the ALJ concluded that Moody "does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, [Moody] does not have a severe impairment or combination of impairments." Dkt. 3-3 at 19-22. Although the ALJ failed to apply the standard required by the Fifth Circuit for a non-severe impairment, the failure to apply the standard in this case resulted in harmless error.[3]

---

[3] The claimant is required to make only a *de minimis* showing at step two. *Id.*; *Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992) ("this Circuit, like other circuits, has conceded that the Secretary may require the claimant to make a *de minimis* showing that her impairment is severe enough to interfere with her ability to work." (emphasis in original)). It is unclear that the ALJ applied a *de minimis* standard or interpreted the regulatory language "significantly

6

The ALJ made his non-severity finding after consideration of "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as consideration of opinion evidence. *Id*. As part of his decision, the ALJ summarized Moody's medical history. Moody was diagnosed with breast cancer in October 2015 and alleged an onset of disability date of October 1, 2015. Dkt. 3-9 at 61. A biopsy in November 2015 revealed invasive ductal carcinoma, grade two. *Id.* at 65. In December 2015, Moody's doctor noted that her breast mass was negative for metastatic disease and scheduled her to begin chemotherapy in January 2016. *Id.* at 69-70. There is no evidence in the record that prior to January 2016 Moody's breast cancer had even a *de minimis* impact on her ability to perform basic work functions.

Beginning in January 2016, Moody underwent six cycles of chemotherapy, at 3-week intervals, which she tolerated well. *Id.* at 106-08. In February and March 2016, Moody reported that her reflux, nausea, and diarrhea were controlled with medication. *Id.* at 95-105. In April 2016, after five cycles of chemotherapy, Moody reported she was doing well, her nausea and diarrhea were under control with medication, and she denied any major complaints or fatigue. *Id.* at 106-08.

In May 2016 Moody underwent a left skin-sparing mastectomy and left axillary sentinel lymph node biopsy. Dkt. 3-10 at 33. During a follow up appointment in June, Moody reported she was doing well although a bit weak from "overdoing it." *Id.* at 40. Her post-operative pain was controlled with medication. *Id.* at 42. She was able to exercise in the pool as tolerated. *Id.* at 46. After recovery from the May surgery, Moody resumed chemotherapy with Herceptin infusions. Dkt. 3-11 at 43. Moody consulted with a plastic surgeon in August 2016, who reported

---

limits" to require something more. However, because the determining factor here is the duration, not the intensity, of the Moody's medically determinable impairment, any error on this point is harmless.

she was doing well and healing nicely at that time. *Id.* at 12. In September 2016 Moody's oncologist reported that she was tolerating her treatment well without any problems. Moody underwent a second left breast revision in September 2016. *Id.* at 19-20. In October 2016, the plastic surgeon again reported she was doing well and healing nicely. *Id.* at 14. In November 2016, Moody underwent a nipple reconstruction, which also went well. Dkt. 3-15 at 5. At a January 2017 follow-up visit the surgeon again noted that she was doing well and healing well, although she had a rash. *Id.* at 7.

At the hearing on February 9, 2017, Moody testified that she had one more month of chemotherapy with Herceptin and would then be finished with chemotherapy. Dkt. 3-3 at 34. She testified that it was her cancer treatment that kept her from working. *Id.* at 35-36. She also testified that after finishing chemotherapy, she would have her port removed and then possibly undergo another reconstructive procedure on her breast. *Id.* at 36. She stated she is hopeful that her pain will go away and her strength will return over time. *Id.* at 37. After surgery, she was restricted from lifting anything heavier than a milk jug for eight weeks and she has not gotten to point since her diagnosis since she can do that, although her stamina is improving some. *Id.* at 38. She has been taking an oral pill and will continue to take it for five years. The oral pill does not have the same degree of side effects as the infusions. *Id.* at 41-42.

The record also contains medical source opinions from a state agency consulting physician, Dr. Teresa Fox, and Moody's treating oncologist, Dr. Jenny Pozadzides. Dr. Fox issued disability determinations on January 8, 2016 on initial review of Moody's disabled widows benefits claim and her disability insurance claim. In each, Dr. Fox reviewed and summarized the then-available medical records including: a September 2015 mammogram which showed a suspicious nodule in Moody's left breast; a normal bone density test on September 23, 2015; September 30, 2015 biopsy

results consistent with invasive ductal carcinoma with probable lymphatic invasion; December 28, 2015 oncology notes stating no evidence of metastatic disease, and no evidence of malignancy in right breast. Dr. Fox noted chemotherapy started January 8, 2016, after a delay to allow Moody to finish dental work, and she was expected to return in 3 weeks for cycle 2. Dr. Fox opined that Moody's impairment was "severe at the time of adjudication, but not expected to last for 12 mos. in a row" and thus determined that Moody was not disabled. Dkt. 3-4 at 2-14. The ALJ found Dr. Fox's opinions "balanced, objective and consistent with the evidence of record as a whole," and gave them great weight. Dkt 3-3 at 22.

On March 11, 2016, Dr. Pozadzides, wrote a letter "To Whom It May Concern" regarding Moody's diagnosis and treatment. The letter states:

> Ms. Moody is currently receiving chemotherapy. She is on her 4th cycle and treatment is scheduled every 3 weeks for a total of 6 cycles. She will then have surgery and following this she will start Herceptin (chemotherapy) for an additional 8 months. She will also continue to be closely monitored by her medical team and additional treatment recommendations will be made as needed.
>
> As a result of Ms. Moody's diagnosis and treatment needs, including side-effects she is experiencing such as fatigue, nausea and diarrhea, we do not feel that she will be able to work for at least 1 year.

Dkt. 3-9 at 92.

As the ALJ correctly stated, Dr. Pozadzides opinion that Moody will not be able to work for at least 1 year constitutes a finding reserved to the Commissioner and therefore is not a treating physician opinion entitled to controlling weight. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). Dr. Pozadzides's letter also included a description of Moody's current treatment plan (two additional cycles of chemotherapy, to be followed by 8 months of Herceptin), and predicted that Moody will experience side effects such as fatigue, nausea, and diarrhea. However, the ALJ noted that Dr. Pozadzides's opinion that side effects would prevent Moody from working was

9

inconsistent with Dr. Pozadzides's own treatment notes from February and March 2016 in which she noted that Moody's nausea and diarrhea were controlled with medication and she was tolerating chemotherapy well. Dr. Pozadzides's prediction was also inconsistent with Moody's denial in March 2016 that she was experiencing fatigue, muscle weakness, joint pain, or depressive symptoms. In addition, "there are no treatment notes, nor any other medically acceptable clinical and laboratory diagnostic techniques attached to the letter." Dkt. 3-3 at 22. For these reasons, the ALJ gave Dr. Pozadzides opinion little weight. The ALJ's decision was issued in June 2017, well over a year from the date of Dr. Pozadzides's letter. As summarized above, the objective medical evidence regarding Moody's actual condition for the period January 2016 through January 2017 indicates that Moody's symptoms were less severe than Dr. Pozadzides predicted. Thus, substantial evidence supports the ALJ's conclusion that at no time between her alleged onset date of October 1, 2015, and his June 6, 2017 decision, did Moody did have a severe impairment that limited her ability to perform basic work-related activities for 12 *consecutive* months.[4]

2. **No duty to obtain updated medical opinion.**

Moody argues that *Brister v. Apfel*, 993 F. Supp. 574, 578 n.2 (S.D. Tex. 1998) and Social Security Ruling 96-6p impose a non-discretionary duty on the ALJ to obtain an updated medical opinion "when additional medical evidence is received that in the opinion of the ALJ may change the State agency medical or psychological consultant's findings." Dkt. 9 at 6. Moody contends that this duty was triggered in this case because the state agency physician did not have an

---

[4] In addition to the evidence regarding Moody's breast cancer, the ALJ cited objective medical evidence indicating that Moody's gastroesophageal reflux was well-controlled with medication; she had no functional limitations due to mild systemic disease or obesity; and she had no problems with neuropathy. Dkt. 3-3 at 20-21. Moody did not mention any of these impairments at the hearing, beyond noting that she takes medication for her stomach (Dkt. 3-3 at 34) and confirming that she is not being treated for anything other than breast cancer (Dkt. 3-3 at 35). Substantial evidence supports the ALJ's finding that these impairments were not severe.

opportunity to review Moody's post-January 8, 2016 records, including Dr. Pozadzides's opinion. However, SSR 16-6p, cited in *Brister* and by Moody, was rescinded effective March 27, 2017 (prior to the ALJ's June 6, 2017 decision) and replaced by SSR 17-2p. SSR 17-2p, 2017 WL 3928306 (Mar. 27, 2017). SSR 17-2p does not contain the "when additional medical evidence is received that . . . may change the …consultant's findings" language cited by Moody. *Id.* Furthermore, the great weight of authority in the Fifth Circuit holds that the decision to obtain an updated medical expert opinion is discretionary. *See, e.g.*, *Dominguez v. Astrue*, 286 F. App'x 182, 186 (5th Cir. 2008) ("the ALJ was not required to obtain medical expert testimony . . . the use and consideration of medical expert testimony is solely within the discretion of the ALJ"); *Wycoff v. Berryhill*, Civil Action No. 4:18-cv-885, 2019 WL 699995 at *8 (S.D. Tex. Feb. 20, 2019) ("[W]hether to seek an updated medical opinion is within the ALJ's discretion."); *Zahreai v. Colvin*, Civil Action No. 16-CV-396, 2017 WL 3034716 at *5 (W.D. Tex. July 7, 2017) (same); *Ybarra v. Colvin*, Civil Action No. 4:13-cv-3720, 2015 WL 222330 at *7 (S.D. Tex. Jan. 14, 2015) (same); *Malone v. Colvin*, Civil Action No. H-13-3043, 2015 WL 1291824 at *14 (S.D. Tex. Mar. 16, 2015) (same). Because substantial evidence supports the ALJ's decision, the ALJ did not err in declining to obtain an updated medical opinion. *See Malone*, 2015 WL 1291824 at *15 (no error in declining to obtain updated medical opinion where ALJ's decision was based on substantial evidence.).

3. **No error in assessing credibility.**

Moody argues that the ALJ made a conclusory statement regarding Moody's credibility and failed to comply with SSR 96-7p, which requires the ALJ to evaluate the plaintiff's subjective symptoms and the extent to which they are consistent with the objective medical evidence and to

give "specific reasons" for the credibility finding.[5] SSR 96-7p also has been superseded for cases decided on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p, which applies to cases decided on or after March 28, 2016, "clarif[ies] that subjective symptom evaluation is not an examination of an individual's character[,]" and that when evaluating a claimant's subjective symptoms, adjudicators should "consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." *Id.* at *2.

Pursuant to SSR16-3, the agency employs a two-step process for evaluating an individual's symptoms. First, the individual must establish a medically determinable impairment capable of producing the pain or other symptoms. *Id.* at 3; *see also Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995) (citing 20 C.F.R. § 404.1529). Next, the ALJ evaluates the intensity and persistence of the individual's symptoms and determines the extent to which the symptoms limit the individual's ability to perform work related activities. According to SSR 16-3p, the ALJ must consider the record as a whole and should consider factors such as the plaintiff's daily activities, aggravating factors, and medication or other treatments. *Id.* at *7-8. "In evaluating an individual's symptoms, it is not sufficient for [agency] adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." 2017 WL 5180304 at *10. The decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

---

[5] An ALJ's credibility findings on a claimant's subjective complaints are entitled to deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

Here, the ALJ concluded that while Moody's medically determinable impairments could produce the alleged symptoms, her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Dkt. 3-3 at 21. The decision also sets forth the basis for the ALJ's conclusion that Moody's statements are not entirely consistent with the medical evidence. For example, the ALJ explained that Moody's statements about difficulty using her arms, muscle weakness, lost stamina, and joint pain are inconsistent with her reports to her doctors. Specifically, the ALJ noted that in February 2016, after two cycles of chemotherapy, "the claimant reported her reflux, nausea and diarrhea were controlled with medication"; in March 2016 her "diarrhea and nausea were controlled with medication" and she "denied weakness and grade 1 neuropathy"; in April 2016, after five cycles of chemotherapy, "was doing well and denied major complaints[,]" "denied fatigue, and stated her nausea and diarrhea were under control with medication." *Id.* The ALJ decision notes that although her surgeon restricted her from heavy lifting after her May 2016 surgery, this was not a permanent restriction. *Id.* at 21-22. In addition, in September 2016, Moody's oncologist stated that Moody was tolerating her treatment well "without any problems." *Id.* at 21. Moody's surgeon reported she was "doing well" in October and November 2016. *Id.* The decision contains more than a "single, conclusory statement" as well as "specific reasons" for the weight given to the claimant's statements about her symptoms that are "consistent with and supported by the evidence. 2017 WL 5180304 at *10. Therefore, the ALJ did not err in assessing Moody's subjective complaints.

## III. Conclusion

The court concludes that the ALJ's decision is supported by substantial evidence and is not based on an error of law. Thus, Moody's motion is **DENIED**, the Commissioner's motion is **GRANTED**, and the Commissioner's decision denying benefits is **AFFIRMED**.

Signed on July 29, 2019, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge